# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**VICTORIA BRADHURST,**
**Claimant Below, Petitioner**

**v.)  No. 24-ICA-344**          (JCN: 2024002485)

**WALMART ASSOCIATES, INC.,**
**Employer Below, Respondent**

**FILED**
**March 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Victoria Bradhurst appeals the July 31, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Walmart Associates, Inc. ("Walmart") timely filed a response.[1] Ms. Bradhurst did not file a reply. The issue on appeal is whether the Board erred in (1) modifying the claim administrator's November 20, 2023, order and granting Ms. Bradhurst temporary total disability ("TTD") benefits through November 28, 2023, and (2) affirming the claim administrator's January 11, 2024, order denying authorization for a lumbar MRI and three-phase bone scan.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On the morning of July 13, 2023, prior to the compensable injury in this case, Ms. Bradhurst was seen by Alana Marconi, DPM. Ms. Bradhurst reported redness and swelling in her left foot when she woke up that morning. Ms. Bradhurst also complained of gait disturbance. Dr. Marconi's assessment was cellulitis of the left lower limb and type 2 diabetes mellitus with diabetic polyneuropathy. Dr. Marconi noted that there was no obvious skin abrasion to Ms. Bradurst's feet bilaterally.

On July 24, 2023, Ms. Bradhurst, a deli worker at Walmart in Martinsburg, West Virginia, completed a Report of Occupational Injury or Disease form. Ms. Bradhurst stated

---

[1] Ms. Bradhurst is represented by J. Thomas Greene Jr., Esq., and T. Colin Greene, Esq. Walmart is represented by Brandon L. Rosen, Esq.

1

that while cleaning a rotisserie in the deli at work at 5:00 pm on July 13, 2023, chemicals spilled down her leg, injuring her left leg and foot. Dr. Marconi completed the physician's portion of the form on July 24, 2023, which stated that a chemical spill on July 13, 2023, damaged Ms. Bradhurst's skin and caused an infection above her ankles.

On July 17, 2023, Ms. Bradhurst followed up with Dr. Marconi regarding her left foot cellulitis. Dr. Marconi assessed pain in the left foot, localized edema, and type 2 diabetes mellitus with diabetic polyneuropathy. Ms. Bradhurst indicated that she had a chemical spill at work which resulted in a similar presentation, but to the rest of her leg, and that it had since resolved with topical cortisone.[2] On July 31, 2023, Ms. Bradhurst was seen by Dr. Marconi, who assessed type 2 diabetes mellitus with diabetic polyneuropathy, pain in left foot, corns and callosities, and tinea unguim. Ms. Bradhurst indicated that she believed these issues started with a chemical spill at work. On August 17, 2023, Ms. Bradhurst was again seen by Dr. Marconi, who assessed pain in the left foot, benign neoplasm of connective soft tissue of left lower limb including hip, and type 2 diabetes mellitus with diabetic polyneuropathy. Ms. Bradhurst also complained of skin lesions related to the chemical spill at work.

On August 31, 2023, Ms. Bradhurst was seen by Omar Nadra, M.D., for an evaluation of the pain in her lower left extremity. Dr. Nadra assessed left leg swelling with pain and noted that Ms. Bradhurst had developed a knot on the sole of her left foot. Dr. Nadra opined that the pain after the chemical spill might be related to neuropathy, and he recommended a continued workup with Ms. Bradhurst's primary care provider or neurology.

On September 1, 2023, Ms. Bradhurst was seen by Dama Vance, CFNP, as a new patient. Ms. Bradhurst complained of a rash located on her feet, which was painful and mild in severity. Ms. Vance noted that Ms. Bradhurst was involved in a chemical spill in July. She assessed post-inflammatory hyperpigmentation, a neuroma, keratosis, history of basil cell carcinoma, and history of well differentiated squamous cell carcinoma.

On September 14, 2023, Ms. Bradhurst followed up with Dr. Marconi and reported bilateral lower leg discoloration. Dr. Marconi assessed chronic diabetic polyneuropathy, left foot pain, and lymphedema.

On October 24, 2023, Ms. Bradhurst began treatment with George Stergis, M.D., a neurologist. Dr. Stergis assessed cervical stenosis, encephalopathy due to COVID-19 virus, migraine with aura, coronary artery disease, and diabetes. Dr. Stergis ordered an MRI of

---

[2] The record establishes that Ms. Bradhurst did not report a work injury at the time of this visit with Dr. Marconi.

the cervical spine, and an MRI of the brain multi-sequence. Dr. Stergis recommended that Ms. Bradhurst not return to work until she was seen on March 12, 2024.

On October 25, 2023, Ms. Bradhurst was seen by CFNP Vance. She reported skin lesions on her chest, right forearm, and left upper back. Ms. Vance assessed seborrheic keratosis, neoplasm of uncertain behavior, and unspecified rash.

Ms. Bradhurst was again seen by Dr. Stergis on October 31, 2023, for a follow up regarding a tremor. Dr. Stergis noted that Ms. Bradhurst had a history of diabetes, and assessed CAD, encephalopathy due to COVID-19, cervical stenosis, B12 deficiency, neuropathy, and migraines. On examination, Dr. Stergis noted that Ms. Bradhurst had good strength except for collapsing weakness with pain of the left foot dorsiflexion and inversion, varicosities in the left leg and foot, and normal ambulation and stride.

On November 14, 2023, Ms. Bradhurst's NCV/EMG was interpreted by Neal Crowe, M.D. Dr. Crowe opined that this was an abnormal and complex EMG/NCV of the left lower extremity, revealing electrophysiologic evidence of a combination of subacute denervation isolated to the left medial gastroc muscle and a more significant loss of amplitude in the left peroneal and tibial motor responses, which he noted was suspicious for a left S1 radiculopathy. However, Dr. Crowe noted that a more generalized axonal sensorimotor polyneuropathy could result in similar findings.

On November 20, 2023, the claim administrator issued an order closing the claim for TTD benefits. The claim administrator noted that medical evidence did not show that Ms. Bradhurst continued to be totally disabled. Ms. Bradhurst protested this order.

On November 28, 2023, Joseph Grady II, M.D., performed an independent medical evaluation ("IME") of Ms. Bradhurst. Dr. Grady assessed a reported history of chemical exposure of uncertain significance. Dr. Grady noted that Ms. Bradhurst reported having a chemical exposure from an oven cleaner. However, he opined that there was no apparent skin lesion from that episode of exposure and stated that if there was any allergic reaction or caustic burn, it had since resolved. Dr. Grady did not believe that Ms. Bradhurst's current symptoms were related to the July 13, 2023, exposure incident. Dr. Grady placed Ms. Bradhurst at maximum medical improvement ("MMI").

On November 30, 2023, Dr. Stergis submitted a request for authorization for a three-phase bone scan and lumbar MRI.

On December 13, 2023, Dr. Grady issued an addendum regarding Ms. Bradhurst's impairment rating at the request of the claim administrator. Dr. Grady noted that Ms. Bradhurst was at MMI at the time of his examination, because there was no detectable abnormality from the episode of exposure to oven cleaner. Further, Dr. Grady stated that if Ms. Bradhurst were rated for impairment using the American Medical Association's

3

*Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), due to the absence of any ratable criteria regarding the July 13, 2023, event, she would have a 0% whole person impairment rating.

On January 11, 2024, the claim administrator denied Dr. Stergis' request, on the basis that Dr. Grady could not associate any vascular testing or further treatment as medically necessary or related to the July 13, 2023, work incident. Further, the claim administrator noted that in regard to the lumbar MRI, the lumbar is not a compensable component of the claim. Ms. Bradhurst protested this order.

On January 29, 2024, Dr. Stergis completed a Diagnosis Update, which listed Ms. Bradhurst's primary diagnosis as complex regional pain after a chemical spill to the left lower extremity. Dr. Stergis indicated that Ms. Bradhurst had clinical findings of swelling and discoloration in the left lower extremity. Dr. Stergis recommended an MRI of the lumbar spine, a three-phase bone scan, and physical therapy.

In an addendum report dated February 26, 2024, Dr. Grady opined that the lumbar spine MRI and three-phase bone scan would not be causally related to the chemical exposure involving the left lower leg and foot. Further, Dr. Grady stated that Ms. Bradhurst was at MMI for the compensable injury following the EMG/NCS study performed on November 14, 2023, and that the evidence of polyneuropathy cannot be associated with the incident of July 13, 2023. Dr. Gray opined that the peripheral vascular disease and diabetic neuropathy are reasonable explanations for Ms. Bradhurst's complaints involving the left lower extremity.

On March 6, 2024, Ms. Bradhurst underwent a lumbar spine MRI, which revealed multilevel spondylosis with mild spinal stenosis at L3-L4 and L4-L5, moderate left foraminal narrowing at L4-L5 on the right and at L5-S1, and mild levoscoliosis.

On March 14, 2024, Ms. Bradhurst gave a deposition regarding her claim. She testified that on July 13, 2023, she was working in the Walmart deli and cleaning the rotisserie around 7:00 pm, when the cleaning solvent that she was using spilled onto her left leg from her hip down to her toes. Ms. Bradhurst stated that she felt a burning sensation, and that she sought treatment with Dr. Marconi the following day. Ms. Bradhurst testified that she did not have any issues with her left leg and foot before this incident, and that she had no issues with neuropathy in her feet prior to the work injury.

On March 20, 2024, Dr. Grady completed an additional IME regarding Ms. Bradhurst's claim. Dr. Grady assessed a reported history of unresolved chemical exposure to oven cleaner, left foot pain of uncertain etiology, trophic changes of the bilateral lower extremity suggestive of possible peripheral vascular disease, reported history of sensory abnormality with EMG/nerve condition study reporting a left S1 radiculopathy, and reported history of complex regional pain syndrome. Dr. Grady opined that Ms. Bradhurst

did not have any physical evidence of an abnormality regarding the left leg. Further, Dr. Grady indicated that he did not believe Ms. Bradhurst has complex regional pain syndrome as diagnosed by Dr. Stergis, as her symptoms are not specific and could be associated with alternative diagnoses such as peripheral vascular disease. Dr. Grady noted that the MRI of the left lower extremity in August 2023 revealed old osteochondral lesions of the talar dome and underlying degenerative changes that could account for some of Ms. Bradhurst's left foot and ankle issues.

On April 23, 2024, Dr. Grady issued an addendum report regarding Ms. Bradhurst's claim after reviewing the findings of the March 6, 2024, lumbar spine MRI. Dr. Grady opined that the MRI findings were unrelated to the mechanism of injury described by Ms. Bradhurst. Further, Dr. Grady noted that the occupational injury report provided the time of the injury as July 13, 2023, at 5:00 pm, but that the initial report at Frederick Foot and Ankle clinic was on July 13, 2023, at 9:28 am, prior to the time of exposure. Dr. Grady also noted that the report from Frederick Foot and Ankle clinic stated that Ms. Bradhurst presented for new left foot redness and swelling, from when she woke up that morning. Dr. Grady indicated that there were significant pre-existing symptoms involving the left leg prior to the reported occupational exposure. Based on the foregoing, Dr. Grady concluded that the requested lumbar spine MRI and three-phase bone scan were not associated with the reported mechanism of injury.

On May 21, 2024, Dr. Stergis authored a letter regarding Ms. Bradhurst's claim. Dr. Stergis indicated that he first treated Ms. Bradhurst on October 31, 2023, for chemical burn injuries to the left lower extremity on July 13, 2023. Dr. Stergis opined that over subsequent examinations, her symptoms were consistent with an impression of regional pain syndrome and left sciatica versus lumbar root compression. Dr. Stergis indicated that he requested a lumbar MRI and a three-phase bone scan to evaluate these conditions.

On July 31, 2024, the Board issued an order which (1) modified the claim administrator's November 20, 2023, order and granted TTD benefits through November 28, 2023, and (2) affirmed the claim administrator's January 11, 2024, order, which denied the request for a lumbar MRI and three-phase bone scan. The Board noted that Dr. Grady placed Ms. Bradhurst at MMI on November 28, 2023, and concluded that she was thus entitled to TTD benefits until that date. Further, the Board found that Dr. Grady's opinion that the requested lumbar MRI and three-phase bone scan were not associated with the reported mechanism of the work injury on July 13, 2023, was persuasive. It is from this order that Ms. Bradhurst now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further

proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;

(2) In excess of the statutory authority or jurisdiction of the Board of Review;

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Ms. Bradhurst argues that the Board was clearly wrong in affirming the denial of Dr. Stergis' request for a three-phase bone scan and lumbar MRI, because Dr. Stergis is the better situated medical professional to assess the cause of her ongoing pain and physical limitations. Further, Ms. Bradhurst asserts that she is entitled to TTD benefits for the period of November 28, 2023, to May 21, 2024, the date of Dr. Stergis' last report. We disagree.

As set forth by the Supreme Court of Appeals of West Virginia "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

Turning to the issue of authorization for the three-phase bone scan and lumbar MRI, the claim administrator must provide medically related and reasonably required medical treatment for a compensable injury pursuant to West Virginia Code § 23-4-3 (2005) and West Virginia Code of State Rules § 85-20-9.1 (2006). Here, the Board found that Dr. Grady's opinion that the requested lumbar MRI and three-phase bone scan were not associated with the reported mechanism of the work injury was persuasive. Further, the Board noted that when Ms. Bradhurst was first seen by Dr. Stergis on October 23, 2023, she did not mention a work incident. The Board found that although Ms. Bradhurst testified that she did not have issues with left leg swelling redness, gait derangement, temperature issues, discoloration, or neuropathy prior to the work injury, this is inconsistent with Dr. Marconi's medical report dated July 13, 2023, at 9:28 am, which is before the work incident is alleged to have occurred. Finding no error, we defer to the Board's credibility determinations. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual

determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence.")

Once a claimant is released to return to work, returns to work, or is placed at MMI, he or she is no longer entitled to TTD benefits. *See* W. Va. Code § 23-4-7a (2005). Here, the Board found that Dr. Grady placed Ms. Bradhurst at MMI on November 28, 2023, and that she was thus entitled to TTD benefits until that date. With our deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in modifying the claim administrator's order and authorizing TTD benefits through November 28, 2023.

Accordingly, we affirm the Board's July 31, 2024, order.

Affirmed.

**ISSUED:** March 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White